**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| CENTER FOR INVESTIGATIVE REPORTING, | |
| *Plaintiff*, | |
| v. | Civil Action No. 1:18-cv-01964 (CJN) |
| U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, et al., | |
| *Defendants*. | |

## MEMORANDUM OPINION

Plaintiff Center for Investigative Reporting (CIR) submitted two Freedom of Information Act (FOIA) requests to Defendant Immigration and Customs Enforcement (ICE) seeking arrest records of ICE detainees.  *See* CIR E-Mail of Apr. 17, 2017 ("CIR Request 1") (citing 5 U.S.C. § 552), ECF No. 18-3; CIR E-Mail of Apr. 19, 2017 ("CIR Request 2"), ECF No. 18-4.  Having narrowed the issues, both Parties now seek summary judgment on a single question:  whether the categorical withholding of detainees' names from ICE arrest records is justified under FOIA's privacy exemptions.  *See generally* Defs.' Mot. for Summary Judgment ("Defs.' Mot."), ECF No. 18; Pl.'s Mot. for Summary Judgment ("Pl.'s Mot."), ECF No. 19.  The Court concludes that ICE has properly withheld that information.

## I.    Background

CIR is a "nonprofit investigative journalism organization."  Compl. ¶ 2.  On April 17, 2017, it submitted a FOIA request seeking:

> All entries in the "DHS/Immigration and Enforcement (ICE)-011
> Criminal Arrest Records and Immigration Enforcement Records
> (CARIER) System of Records" for each arrest record maintained by

the CARIER system for fiscal year 2015 to present, with a breakdown by field office, fiscal year and arrest date.

CIR Request 1 at 1.  It also requested that the records contain several types of information, including nationality, immigration history, education history, and criminal history.  *Id.*  Two days later, CIR submitted a second FOIA request seeking:

All entries in the "DHS/Immigration and Enforcement (ICE)-011 Criminal Arrest Records and Immigration Enforcement Records (CARIER) System of Records" for each arrest record maintained by the CARIER system for January 1, 2017 to the present, with a breakdown by field office, fiscal year and arrest date, and including [the a]mount of bond posted [and d]ata about persons who post or arrange an immigration bond for the release of an individual from ICE custody including . . . [f]ull [n]ame; [a]ddress; [p]hone numbers; [and o]ther information.

CIR Request 2 at 1.

Over a month later, ICE responded to acknowledge the requests, consolidate them, and assign a FOIA control number.  *See* ICE E-Mail of Jun. 1, 2017, ECF No. 18-5.  Nearly five months later, ICE reported that it had "conducted a search . . . for records responsive to [the] request and no records responsive to [the] request were found."  ICE Ltr. of Oct. 27, 2017 at 1, ECF No. 18-6.  CIR appealed administratively, alleging that ICE had failed to conduct an adequate search of its records and did not provide CIR an opportunity to clarify its request before denying it.  *See* CIR Ltr. of Nov. 2, 2017, ECF No. 18-7 at 1–6.  ICE's legal counsel reviewed the appeal, agreed to work with CIR to refine the search terms, and remanded to the FOIA office to conduct a new search for documents.  *See* ICE Ltr. of Dec. 5, 2017, ECF No. 18-8.

Nothing happened for months, so CIR filed this suit in August 2018.  *See generally* Compl.  The Complaint spurred action on ICE's part; it produced several Excel spreadsheets containing responsive information.  Defs.' Statement of Undisputed Material Facts ¶ 4, ECF No. 18-1.  But one spreadsheet withheld certain categories of information under FOIA Exemptions 6

and 7(C).  5 U.S.C. § 552(b)(6), (b)(7)(C).  That information included "the names and bond numbers of detained aliens, and the names, social security numbers or tax identification numbers, postal addresses, and phone numbers of those that secured bonds for those detained aliens." Decl. of Toni Fuentes ¶ 25, ECF No. 18-2.

Because the Parties could not reach an accord on the propriety of those redactions, they filed Cross-Motions for Summary Judgment.  But during briefing, the Parties agreed to a limited production of the bond information—ICE produced the names of businesses and non-profit organizations that provided bonds, while CIR agreed not to seek release of either the identities of private individuals who provided bonds or the more detailed private information of the businesses and non-profits, such as tax identification numbers or phone numbers.  *See* Defs.' Opp. to Pl.'s Mot. for Summary Judgment at 2 ("Defs.' Opp."), ECF No. 22.  In the wake of that agreement, only one dispute remains:  whether ICE properly withheld the detainees' names.

## II.    Mooted Arguments

Before turning to that question, the Court first addresses the proper resolution of the claims the Parties initially raised in their Cross-Motions for Summary Judgment but resolved through negotiation.  Although the Parties agree that those claims are now moot, they do not agree about what to do with them.  Defendants contend that they are entitled to summary judgment on those issues.  *See* Defs.' Opp. at 2.  CIR argues that the proper remedy is dismissal without prejudice.  *See* Pl.'s Rep. in Support of its Mot. for Summary Judgment ("Pl.'s Rep.") at 2, ECF No. 24.

CIR is correct.  "[A] case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome."  *Cty. of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979) (internal quotation omitted).  "FOIA lawsuits generally become moot once an

agency has made available requested non-exempt records, whether voluntarily or after court order." *Judicial Watch, Inc. v. U.S. Dep't of Homeland Sec.*, 895 F.3d 770, 777 (D.C. Cir. 2018).  "The rule against deciding moot cases forbids federal courts from rendering advisory opinions or deciding questions that cannot affect the rights of litigants in the case before them." *Hall v. CIA*, 437 F.3d 94, 99 (D.C. Cir. 2006) (internal quotation omitted).  When plaintiffs have "obtained everything that [they] could recover by a judgment of this court in [their] favor," there is nothing left to do but dismiss the case.  *Id.* (internal quotation omitted).  "[W]hen mootness results from unilateral action of [one] party," dismissal is proper so that the other party will not "later be subject to the judgment's preclusive effect."  *Id.* at 99–100 (internal quotations omitted).

Plaintiffs' claims that have been resolved through negotiation are therefore dismissed without prejudice.

### III.    Analysis

"FOIA . . . [requires] that an agency disclose records on request, unless they fall within one of nine (narrow) exemptions."  *Milner v. Dep't of the Navy*, 562 U.S. 562, 565 (2011). "FOIA mandates a 'strong presumption in favor of disclosure,'" *Nat'l Ass'n of Home Builders v. Norton*, 309 F.3d 26, 32 (D.C. Cir. 2002) (quoting *U.S. Dep't of State v. Ray*, 502 U.S. 164, 173 (1991))—so much so that, unlike APA lawsuits, in which agency actions are subject to arbitrary and capricious review, FOIA "expressly places the burden 'on the agency to sustain its action' and directs district courts 'to determine the matter *de novo*,'" *U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 756 (1989) (quoting 5 U.S.C. § 552(a)(4)(B)).

ICE invokes two exemptions.  First, it asserts that the detainees' names are subject to Exemption 6, which covers "personnel and medical files and similar files the disclosure of which

would constitute a clearly unwarranted invasion of privacy." 5 U.S.C. § 552(b)(6). Second, ICE

claims that the names are subject to Exemption 7(C), which covers "information compiled for

law enforcement purposes [such] that the production . . . could reasonably be expected to

constitute an unwarranted invasion of personal privacy." *Id.* § 552(b)(7)(C). Although the scope

of the two exemptions overlaps, they are not redundant.

> Exemption 7(C)'s privacy language is broader than the comparable
> language in Exemption 6 in two respects. First, whereas Exemption
> 6 requires that the invasion of privacy be "clearly unwarranted," the
> adverb "clearly" is omitted from Exemption 7(C). . . . Second,
> whereas Exemption 6 refers to disclosures that "would constitute"
> an invasion of privacy, Exemption 7(C) encompasses any disclosure
> that "could reasonably be expected to constitute" such an invasion.
> . . . Thus, the standard for evaluating a threatened invasion of
> privacy interests resulting from the disclosure of records compiled
> for law enforcement purposes is somewhat broader than the standard
> applicable to personnel, medical, and similar files.

*Reporters Comm.*, 489 U.S. at 756 (quoting 5 U.S.C. § 552(b)(6), (b)(7)(C)).

Applying Exemption 6 involves two steps. First, the Court must determine whether the

information constitutes "personnel and medical files [or] similar files." *Multi Ag Media LLC v.*

*Dep't of Agric.*, 515 F.3d 1224, 1227–28 (D.C. Cir. 2008) (quoting 5 U.S.C. § 552(b)(6)). Then,

to determine whether release "would constitute a clearly unwarranted invasion of privacy," 5

U.S.C. § 552(b)(6), the Court must "balance the privacy interest that would be compromised by

disclosure against any public interest in the requested information," *Multi Ag Media*, 515 F.3d at

1228. The privacy interest must be "substantial," not "*de minimis*," but even a "substantial"

interest may not exempt the information if the privacy interest is outweighed by the public's

interest in disclosure. *Id.* at 1229–30; *see also Consumers' Checkbook, Ctr. for the Study of*

*Servs. v. U.S. Dep't of Health & Human Servs.*, 554 F.3d 1046, 1050–51 (D.C. Cir. 2009)

(permitting the withholding of records containing payment information for individual

physicians).  The Court considers the privacy interests "in light of the consequences that would follow" from disclosure.  *NARA v. Favish*, 541 U.S. 157, 170 (2004).  The burden of demonstrating a public interest in disclosure is on the requester, who must show that the "public interest sought to be advanced is a significant one, an interest more specific than having the information for its own sake," and that disclosure is "likely to advance that interest."  *Id.* at 172.

Exemption 7(C) involves a similar task.  The Court first determines whether the information is "compiled for law enforcement purposes," 5 U.S.C. § 552(b)(7)(C), and then does the same balancing test as above, keeping in mind that "'Exemption 7(C) is more protective of privacy than Exemption 6' and thus establishes a lower bar for withholding material."  *ACLU v. U.S. Dep't of Justice*, 655 F.3d 1, 6 (D.C. Cir. 2011) (quoting *U.S. Dep't of Def. v. FLRA*, 510 U.S. 487, 496 n.6 (1994)).

There is no need to wade through how both exemptions apply.  Because Exemption 7(C) requires a lower burden of proof, and because both exemptions employ the same balancing approach, it is unnecessary to determine whether Exemption 6 applies.  If ICE does not adequately justify withholding under Exemption 7(C)'s easier standard, then it cannot justify withholding under Exemption 6.  And if ICE proves its case on Exemption 7(C), then whether Exemption 6 also applies is irrelevant.  *Tuffly v. U.S. Dep't of Homeland Sec.*, 870 F.3d 1086, 1092 & n.5 (9th Cir. 2017).  The Court therefore limits its analysis to the application of Exemption 7(C).

CIR concedes that the records were compiled for law enforcement purposes.  Pl.'s Mot. at 3–4.  The inquiry therefore focuses on whether the detainees have a substantial privacy interest in the association of their names with the details of their detention and whether that privacy interest outweighs the public's interest in disclosure.

CIR argues that ICE cannot claim a legitimate privacy interest in associating a detainee's name with the fact or circumstances of his detention "because that information is already publicly available." *Id.* at 4.  ICE maintains a searchable online database that permits searchers who know a detainee's name and country of origin to find the details of the individual's detention.  *See id.* at 4 (citing *Online Detainee Locator System*, U.S. Immigration & Customs Enf't, https://locator.ice.gov/odls (last visited Dec. 2, 2019)).  For example, a quick search of the database with the name "Jose Hernandez" from Mexico yields four detainees who meet those simple criteria.  *See* Pl.'s Resp., Ex. B, ECF No. 24-2.  That search also indicates where those individuals are in custody.  *Id.*  Further, ICE regularly publishes press releases containing detainees' names.  *See* Pl.'s Mot. at 4 (citing News Release, U.S. Immigration & Customs Enf't, *Salvadoran National Faces Felony Illegal Reentry Charges* (Apr. 3, 2019), https://www.ice.gov/news/releases/salvadoran-national-faces-felony-illegal-reentry-charges).  According to CIR, if ICE is willing to publish the same information in other contexts, then it cannot claim a privacy interest that would satisfy the requirements of Exemption 7(C).  Pl.'s Mot. at 4.

But that can't be the case.  As the Ninth Circuit recently recognized,

> [D]isclosing the names of . . . detainees risks subjecting them to significant invasions of personal privacy.  The detainees would be publicly identified as unauthorized immigrants who had . . . been held in government detention, a status which carries with it the potential for stigma, harassment, discrimination, illegal detention, and even violence.  In addition, the detainees' names would be linked to other personal and potentially embarrassing information that has already been disclosed but not identified as applying to them.

*Tuffly*, 870 F.3d at 1098.  Although CIR notes that *Tuffly* did not consider the existence of the online database, that argument ignores the distinction the Supreme Court made in *Reporters Committee*.  There, the requester asked for FBI "rap sheets" on four known mafia figures.  489 U.S. at 757.  Much of the information had already been disclosed to the public in small bits

through court documents and press releases, so the requesters argued that there was no privacy interest to protect at all. *Id.* at 763. The Court disagreed, finding a "vast difference between the public records that might be found after a diligent search of courthouse files, county archives, and local police stations throughout the country and a computerized summary located in a single clearinghouse of information." *Id.* at 764. In the Court's view, the amalgamation of private information, even if that information had previously been made public in bits and pieces, might still justify withholding. *Id.* at 780.

The D.C. Circuit fielded a similar question in *ACLU*. There, the requester sought, in part, "[t]he case name, docket number, and court of all criminal prosecutions, current or past, of individuals who were tracked using mobile location data, where the government did not first secure a warrant based on probable cause for such data." *ACLU*, 655 F.3d at 4. The court emphasized that "the scope of Exemption 7(C) can extend even to [information regarding] convictions and public pleas." *Id.* at 8 (citing *Reporters Comm.*, 489 U.S. at 780). "[A]s a categorical matter . . . a third party's request for law enforcement records of information about a private citizen can be reasonably expected to invade that citizen's privacy." *Id.* (quoting *Reporters Comm.*, 489 U.S. at 780). "[S]uch records may therefore not be disclosed in the absence of a cognizable public interest." *Id.* But the court determined that the public interest in disclosure outweighed the privacy interest, primarily by distinguishing the request in *Reporters Committee* and finding that the ACLU's request was more like "scattered disclosure of . . . bits of information" rather than a "revelation of the rap sheet as a whole." *Id.* at 10. "[T]he most that [ACLU's requested] disclosure [was] likely to lead to [was] the fact of a single conviction, not a comprehensive scorecard of a person's entire criminal history across multiple jurisdictions." *Id.* Compared with the "significant public interest in disclosure" of warrantless cell phone tracking,

the court determined that disclosure was appropriate.  *Id.* at 12–13; *see also Citizens for Responsibility & Ethics in Wash. v. U.S. Dep't of Justice*, 746 F.3d 1082 (D.C. Cir. 2014) (holding that Exemption 7(C) did not categorically bar release of investigation materials concerning Congressman Tom DeLay's involvement with lobbyist Jack Abramoff).

 Here, even if some detainees' names can be discovered online, there is a "vast difference between the public records that might be found after a diligent search" and a few spreadsheets containing the personal information of each and every ICE detainee.  *Reporters Comm.*, 489 U.S. at 764.  And while a search of ICE's online locator system yields a name associated with a detention center and country of origin, it does not include the additional information that CIR has already obtained and that would be associated with detainees' names if they were produced: immigration history, education history, domestic and foreign criminal history, location of arrest, case category, charges brought in the case, case disposition, and other details.  CIR Request 1. When associated with an individual detainee's name, that information creates a "significant invasion[] of personal privacy."  *Tuffly*, 870 F.3d at 1098.

 ICE therefore asserts a substantial privacy interest that the Court must balance against the public's interest in disclosure.  *ACLU*, 655 F.3d at 8.  And that's where CIR's case falters: neither in its Complaint nor its briefing does it ever assert *any* public interest in the disclosure of the detainees' names.  *See* Pl.'s Mot at 6; Pl.'s Opp. to Def.'s Mot. for Summary Judgment at 5– 6, ECF No. 20; Pl.'s Rep. at 2–4.[1]  CIR repeatedly argues that "ICE did not prove any privacy interest exists at all, let alone a privacy interest rising to the requisite threshold," and thus rests its argument entirely on the contention that the "Court need go no further and should order the

---

[1] CIR does assert a cognizable public interest in the disclosure of the bond information.  *See, e.g.*, Pl.'s Mot. at 4.  But the bond issue is moot, and CIR's assertions on that question have no bearing on the public interest in disclosure of detainees' names.

records produced." Pl.'s Rep. at 4.  CIR's failure to assert any public interest in disclosure

requires summary judgment for ICE.  *Tuffly*, 870 F.3d at 1098; *see also ACLU*, 655 F.3d at 8.

### IV.    Conclusion

Because ICE asserts a substantial privacy interest in the exempted information, the

"records may therefore not be disclosed in the absence of a cognizable public interest." *ACLU*,

655 F.3d at 8.  CIR has the burden of asserting a competing public interest, *Favish*, 541 U.S. at

172, but it made no such assertion.

For the foregoing reasons, Defendants' Motion for Summary Judgment is **GRANTED** as

to the withholding of detainees' names under FOIA Exemption 7(C).  CIR's Motion for

Summary Judgment is **DENIED** as to the same.  The remaining issues raised in the Cross-

Motions for Summary Judgment are **DISMISSED** without prejudice as moot.  An Order will be

entered contemporaneously with this Memorandum Opinion.


DATE:  December 3, 2019

CARL J. NICHOLS
United States District Judge